IN THE DISTRICT COURT OF OTTAWA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| PEORIA TRIBE OF INDIANS OF OKLAHOMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) NO. CJ-2019- 116 |
| | ) |
| STUART D. CAMPBELL; | ) |
| | ) |
| BAXCASE, L.L.C., an Oklahoma Limited Liability Corporation; | ) |
| | ) |
| SNEED LANG, P.C., and its Successor, SNEED LANG HERROLD, P.C., Oklahoma Professional Corporations; | ) |
| | ) |
| DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.; and | ) |
| | ) |
| Other unknown persons or entities as may be determined by discovery and acting in concert or joint participation with Campbell, or otherwise vicariously liable for the wrongful acts alleged, | ) |
| | ) |
| Defendants. | ) |

PETITION

INTRODUCTION AND PARTIES

Plaintiff, the Peoria Tribe of Indians of Oklahoma ("Plaintiff" or "the Peoria Tribe"), comes

before the Court and asserts the following causes of action against Defendants directly and

vicariously for: Professional Malpractice; Breach of Fiduciary Duty; Deceit/Fraudulent

Concealment, Failure to Disclose; Money Had and Received; and, Unjust Enrichment.

In support thereof, Plaintiff alleges and states as follows:

1.      Plaintiff, the Peoria Tribe of Indians of Oklahoma, is a federally recognized Indian

tribe with its headquarters in Miami, Ottawa County, Oklahoma. As a part of its enterprise activity.

1


DEFENDANT'S
EXHIBIT
1

pursuant to the Indian Gaming Regulatory Act (25 U.S.C. ch. 29 §2701 *et seq.*) ("IGRA") and accompanying regulations, the Peoria Tribe operates the Buffalo Run Casino ("Casino") located in Miami, Oklahoma.

2.   The Peoria Tribe maintains and asserts its tribal sovereign immunity as to all other claims and causes of action.

3.   Defendant Stuart D. Campbell ("Campbell") is a resident of Tulsa County and licensed to practice law in the State of Oklahoma.

4.   Defendant Baxcase, L.L.C. ("Baxcase"), is an Oklahoma limited liability company. Its entity address is 10350 South Braden Avenue, Tulsa, Oklahoma 74105, and its registered agent for service in Oklahoma is Stuart Campbell, One West Third Street, Suite 1700, Tulsa, Oklahoma 74103. Baxcase has been referred to as Stuart Campbell's law firm. Upon information and belief, Campbell is the sole shareholder and 100% owner of Baxcase.

5.   Sneed Lang, P.C., is an Oklahoma professional corporation. Sneed Lang merged with Herrold Herrold & Co., P.C., by filing a Certificate of Merger on June 16, 2009 and eventually became Sneed Lang Herrold, P.C. Later, Sneed Lang Herrold, P.C., filed an Amended Certificate of Incorporation on December 5, 2012 and became Sneed Lang, P.C. These firms are collectively referred to herein as "Sneed Lang." For a period of time relevant hereto, Campbell was an employee/partner/shareholder of Sneed Lang. During this period of his employment/partnership/shareholder, Sneed Lang billed for and was paid approximately $244,779.00 for the legal services Campbell and others provided to the Peoria Tribe and the Casino. The exact dates of that employment will be determined through discovery.

6.   Doerner, Saunders, Daniel & Anderson, L.L.P. ("Doerner Saunders"), is an Oklahoma limited liability partnership. During a period of time relevant hereto, Campbell was and is an employee/partner of Doerner Saunders. During this period of his

2

employment/partnership, Doerner Saunders billed and was paid approximately $158,464.00 for legal services Campbell and others provided to the Peoria Tribe and the Casino. The exact period of his employment will be determined through discovery.

7.    Upon information and belief, Plaintiff states there may be other unknown persons or entities, who may be determined by discovery, who acted in concert or joint participation with Campbell, or are otherwise vicariously liable for the wrongful acts alleged herein.

<u>VENUE</u>

8.    The events giving rise to the claims of Plaintiff against Defendants occurred in the State of Oklahoma, Ottawa County.

9.    Venue is proper in this county pursuant to 12 O.S. §134. Venue lies in Ottawa County because Campbell and Baxcase committed wrongful actions in Ottawa County as a part of Campbell's legal representation of the Peoria Tribe and the Casino. As set forth more fully herein, included in the actions which took place in Ottawa County were the payments to Baxcase and the payment of the inflated management fees. Further, Campbell acted to conceal these matters from the Peoria Tribe Business Committee which regularly met at the headquarters of the Peoria Tribe. Those headquarters are located within the borders of Ottawa County.

<u>GENERAL ALLEGATIONS</u>

10.   The Peoria Tribe reasserts and restates the allegations in paragraphs 1 through 9 above the same as if they were fully restated herein.

11.   Pursuant to Article VIII, Section 2, of the Constitution of the Peoria Tribe, the Peoria Tribe Business Committee ("Business Committee") is granted "the authority to act in and on all matters and subjects upon which the Tribe is empowered to act, now or in the future, including, but not limited to the following: . . . (b) [t]o negotiate and make contracts with . . . any individual, firm or company."

12.    On or about March 2, 2004, Direct Enterprise Development, LLC ("DED"), an Oklahoma limited liability company, owned and controlled by David J. Qualls ("Qualls") and Tony D. Holden ("Holden"), entered into a Development Agreement with the Peoria Tribe to develop and manage the Casino for a term of five years. Following the Development Agreement, the Peoria Tribe together with the DED entered into a contract for DED to manage the Casino ("Agreement"). In accordance with the Peoria Tribe Constitution, the Agreement was approved by Resolution of the Business Committee on May 4, 2004. On or about June 3, 2005, the Agreement was submitted to the Chairman of the National Indian Gaming Commission ("NIGC") for his review and approval, as required by 25 U.S.C. §2710(d)(9), and the approval is governed by certain paragraphs of 25 U.S.C. §2711.

13.    The NIGC's review of the Agreement resulted in the discovery of a separate contract between DED and Baxcase. This contract provided for Baxcase, and as a result Campbell, to receive five percent (5%) of the management fee received by DED under the Agreement. This arrangement, according to the NIGC,[1] gave Baxcase and Campbell a financial interest in the operation of the Casino which 25 U.S.C. §2711 and 25 C.F.R. §533.3(d) required both Campbell and Baxcase to undergo a background investigation and suitability determination before the Agreement could be approved. The NIGC repeatedly informed DED and the Peoria Tribe that if Baxcase and Campbell continued to maintain this interest, these requirements had to be met.

14.    In a letter dated February 16, 2007, the NIGC also informed DED that the proposed treatment of depreciation in the Business Plan submitted by DED was contrary to the Agreement, IGRA and applicable NIGC regulations. The Business Plan's erroneous treatment of depreciation

---

[1] NIGC found that this "contract between DED and Baxcase, a law firm owned by Stuart Campbell, which gave Mr. Campbell 5% of the management fee [was] in exchange for legal services rendered to DED and the Tribe."

resulted in an inflated management fee. NIGC specifically found "after the initial deduction of all depreciation, the non-facility depreciation was added back into the calculation as a depreciation adjustment, thus inflating the casino's net revenue and the management fee." Because the management fee is based on a percentage of the Net Gaming Revenue, a deduction of less than all required depreciation illegally inflated the management fee received by DED as well as the five percent (5%) paid to Campbell. In addition to finding that this inflation of the management fee was against regulations, NIGC also found that the depreciation scheme was contrary to the terms of the management agreement. The NIGC required DED and the Peoria Tribe to explain this discrepancy.

15.    In DED's letter dated February 20, 2007 responding to the NIGC, DED informed the NIGC that the compensation provision for Baxcase and Campbell had been changed to a monthly fee that was not based on a percentage of the management fees. In support of this change, DED submitted to the NIGC an affidavit signed by Holden and a revised agreement between DED and Baxcase. As a result of this change in compensation, Baxcase and Campbell avoided the scrutiny of a background investigation and suitability determination.

16.    On or about May 21, 2007, DED submitted a revised Business Plan ("Revised Business Plan") to the NIGC. The Revised Business Plan specified that DED would use all depreciation in calculating Net Gaming Revenue and the related management fee owed to DED.

17.    In reliance on the Revised Business Plan, professed changes in Baxcase and Campbell's compensation, and other professed changes, on October 1, 2007 the NIGC Chair sent a letter to the Peoria Tribe and DED approving the Agreement, which is also referred to as "Third Amended and Restated Management Agreement." This agreement was approved for an initial term of five years.

18. Following the NIGC's approval, the Peoria Tribe and the NIGC were led to believe, particularly by Campbell, that DED would manage and was managing the Casino in compliance with the Agreement, the Revised Business Plan, and the other promises made by DED and its principals to the NIGC and the Peoria Tribe Business Committee.

19. At all material times, DED and its principals exercised sole control over the Casino and its operations. DED was obligated to comply with the Agreement, the Revised Business Plan, IGRA, the rules and regulations adopted by the NIGC and the representations made by DED to the NIGC. Campbell, as attorney for the Peoria Tribe, was required to report to the Peoria Tribe's Business Committee all violations of management agreements, business plans and promises that made to the NIGC, as well as any violations of IGRA and NIGC's rules and regulations.

20. On or about February 7, 2012, the Agreement, with some modifications, was extended in its term through October 7, 2017 ("2012 Agreement"). Changes to the 2012 Agreement did not relate to how depreciation was to be treated when the management fee was calculated or the manner in which Baxcase and Campbell were to be compensated by DED. The 2012 Agreement was submitted for approval and was subsequently approved by the NIGC on September 13, 2012. During this approval process, DED and Campbell did not report to NIGC or the Peoria Tribe Business Committee any changes in the manner in which Baxcase and Campbell were being compensated or in the manner in which DED was calculating its management fee.

21. Campbell acted as an attorney for the Peoria Tribe in connection with the Casino operations and litigation from 2005 until at least May of 2018. He provided continuous representation of the Peoria Tribe as to all legal matters involving the Casino. Campbell represented the Peoria Tribe and the Casino while employed by Sneed Lang initially and later by Doerner Sanders. Both firms billed and were paid by the Casino for Campbell's services to the Peoria Tribe. As the legal representative and fiduciary for the Peoria Tribe and the Casino,

Campbell had a continuous duty exercise the ordinary skill, due care and knowledge of an attorney purporting to have specialized knowledge in the areas of Indian law and particularly Indian gaming, a highly regulated industry. Those duties included protecting the Peoria Tribe and the Casino from injury, including from violations of the agreements approved by NIGC, the promises made to NIGC to obtain those approvals, as well as IGRA and its accompanying regulations and reporting any violations to the Business Committee. The Peoria Tribe and its Business Committee had an innocent reliance on Campbell to fully perform those duties.

22.    Approximately a year after the NIGC approved the Agreement in 2007, without notice to or the approval of either the Business Committee or the NIGC, but with Campbell's knowledge and approval, DED secretly abandoned the modifications contained in the Revised Business Plan and reverted to the illegal and previously disapproved treatment of depreciation, inflating its management fees. In October of 2008, Campbell, again, without the approval or knowledge of the Business Committee of the Peoria Tribe, assisted DED in making this change by submitting to Holden and Qualls a memo (Exhibit 1 attached hereto) supporting the use of the disapproved treatment of depreciation and thereby inflating the management fee. In so doing, Campbell misrepresented the requirements of the NIGC approved Agreement, the Revised Business Plan, as well as IGRA and regulations of the NIGC. DED, with Campbell's knowledge, made this illegal depreciation scheme retroactive, resulting in the payment of inflated past and future management fees. This inflation of the management fee was in direct violation of the promises made to the NIGC to secure the approval of the Agreement.

23.    Over the life of the DED management agreements, the change in calculation of depreciation and the related increase in the management fee resulted in the overpayment to DED of management fees in the amount of $2,067,561.00.

24.     On information and belief, sometime during 2008, DED also secretly reverted to
paying Baxcase and Campbell a percentage of DED's management contract fees, thus giving
Baxcase and Campbell a direct financial interest in the management of the Casino contrary to the
representations by DED to the NIGC in 2007 to secure the approval of the Agreement. This also
resulted in Campbell profiting from the inflated management fees. Campbell did not notify the
NIGC or the Business Committee of this change. By Campbell's failure to give notice to the NIGC
and the Peoria Tribe of his management interest, Campbell made it possible for both himself and
Baxcase to operate without required oversight by the NIGC and the Peoria Tribal Gaming
Commission.

25.     Reinstating the practice of Campbell and Baxcase receiving a percentage of the
management fee and giving them a financial interest in the Peoria Tribe's Agreement with DED
constituted a modification or amendment of the Agreement. *See* 25 C.F.R. §535.1(c)(4).

26.     In violation of IGRA and the regulations of the NIGC, DED and Campbell
concealed from the NIGC and the Peoria Tribe the changes in the calculation of the Net Gaming
Revenue and the resulting management fees, as well as the changes in the payments paid to
Baxcase and Campbell. Campbell and DED did not notify nor seek approval of these changes
from the Peoria Tribe Business Committee. They also did not submit to the NIGC an updated list
of entities and individuals with a financial interest in the Agreement, as required by IGRA and
NIGC regulations. *See* 25 C.F.R. §535.1(b). Campbell did not inform the Business Committee of
these changes or their financial impact on the Peoria Tribe.

27.     As an attorney for the Peoria Tribe, Campbell had a duty to inform the NIGC and
the Peoria Tribe of the reimplementation of the depreciation scheme and his and Baxcase's receipt
of a percentage of the management fee. Campbell also knew, or should have known, that the
failure to report these changes to the NIGC placed his client, the Peoria Tribe, at risk of having

sanctions imposed on the Casino operations by the NIGC. Campbell further knew, or should have known, that the change in the manner in which the management fee was calculated was detrimental to the financial interest of his client, the Peoria Tribe. Campbell's fiduciary duty to the Peoria Tribe imposed on him a continuous duty to act to prevent these changes and to report such changes to the Peoria Tribe's Business Committee. Campbell, either negligently or intentionally, continuously failed to meet his fiduciary obligations to the Peoria Tribe.

28.    These changes in the calculation of the management fee and the compensation of Baxcase and Campbell continued from 2008 until at least their discovery by the NIGC in 2017 and the resulting notification of the Business Committee and perhaps even beyond. This constituted a continuing loss of income and damage to the Peoria Tribe.

29.    The Business Committee first learned of these unlawful actions by Campbell, Baxcase, DED, Qualls and Holden when its members received copies of a letter dated September 28, 2017 from the Chair of the NIGC to DED, Qualls and the Peoria Tribe's Chief. That letter informed the Business Committee of the wrongful actions of DED, DED's resulting receipt of excess management fees contrary to its agreements with the Peoria Tribe and Baxcase and Campbell's financial interest in the management of the Casino.

30.    The Business Committee and the Peoria Tribe were never advised of and never approved of the actions of Campbell, Baxcase and DED in unlawfully diverting the Casino profits directly to themselves by this illegal and unapproved scheme. Qualls and Holden had sole control over the management of the Casino and distribution of its earnings. The Business Committee was never advised by Campbell of the illegal diversion of the Peoria Tribe's income by these practices. Campbell, by his actions and inactions, aided and abetted DED, Qualls and Holden in violating the terms of the approved management agreements and the unlawful receipt of the inflated management fee.

9

31.     During the period from 2008 through May of 2018, on a regular and periodic basis through his actions or inactions, Campbell led the Business Committee to believe and rely upon the belief that the Casino was operated in a lawful manner consistent with the approved management agreements.  In so doing, he either negligently or intentionally concealed and/or misrepresented material facts of which he had knowledge.  These undisclosed material facts included the use of the illegal depreciation scheme and that he and Baxcase had a direct financial interest in the Casino's operation.  Further, Campbell through Baxcase was positioned to and may have in fact provided, Qualls, Holden and DED other secret legal advice to the detriment of the Peoria Tribe.

32.     Throughout his tenure as counsel for the Casino and the Peoria Tribe, Campbell negligently or intentionally failed to disclose his past misconduct and/or the concealment of his role in the illegal calculation of the management fee and his illegal receipt of a percentage of that management fee.  The conduct of Campbell in failing to apprise the Business Committee of the Peoria Tribe of the unlawful actions committed by DED, Qualls, Holden and himself in the operation of the Casino violated his fiduciary duties of loyalty, trust and confidence to the Peoria Tribe and the Casino, as well as the duties as set forth in the Oklahoma Rules of Professional Conduct.  Campbell's misconduct also included his continuing failure to disclose his assistance to DED, Qualls and Holden in actions which were directly adverse to the Peoria Tribe and the Casino. In violation of his fiduciary duties of loyalty, trust and confidence Campbell's actions also violated, without limitation, Rules 1.3, 1.4, 1.7, 1.8 and 5.7(a) of the Oklahoma Rules of Professional Conduct.

33.     As alleged above, during the applicable period of the allegations as stated herein, at various times Campbell was an employee of law firms Sneed Lang and Doerner Saunders (as well as Baxcase) and subject to their control, and/or was performing duties that may be reasonably

said to have been contemplated as part of his employment by the respective law firms. During the applicable period of the allegations as stated herein, Sneed Land and Doerner Saunders represented Campbell as a member, as well as a partner or shareholder of their respective law firms. Campbell took or performed actions under his employment agreement with these law firms such that he acted on behalf of the respective law firms. Campbell had actual and/or apparent authority of those law firms in the performance of legal services for the Peoria Tribe. The performance of legal services by Campbell is within the scope and authority of Campbell as an attorney even if not expressly authorized by the law firms. Thus, the actions or omissions of Campbell during the applicable period of the allegations are the acts or omissions of the respective law firms during Campbell's time of employment with each such law firm, and each may be respectively liable for the actions or omissions of Campbell during the applicable period of employment.

34.    As a result of Campbell's negligent and/or intentional actions and inactions, the Peoria Tribe was damaged in the amount of $2,067,561.00, plus interest for the payment of excessive management fees as well as other damages as set forth herein.

35.    As a result of Campbell's negligent and/or intentional actions and inactions, Campbell and Baxcase were directly unjustly enriched due to Campbell's increased fees in an amount in excess of $100,000.00, the exact amount to be determined by discovery.

36.    As a result of the wrongful actions of Campbell, including, but not limited to, his failure to disclose to the Peoria Tribe Business Committee the illegal operation of the Casino, the Peoria Tribe received a Notice of Violation (NOV #19-03)[2] from the Chairman of the NIGC dated May 10, 2019, which identified the violations referenced herein as well as other violations.

---

[2] *See:* <https://www.nigc.gov/images/uploads/enforcement-actions/NOV-19-03.pdf> (last visited Sept. 16, 2019).

37.    The Chairman of the NIGC has the authority to levy and collect appropriate civil fines, not to exceed $52,596.00 per violation, against the tribal operator of an Indian game or a management contractor engaged in gaming for any violation of any provision of IGRA, any regulation prescribed by the Commission pursuant to this Act, or tribal regulations, ordinances, or resolutions approved under the Act. 25 U.S.C. §2713(a)(1); 25 C.F.R. §575.4. The NOV alleges that Campbell, Baxcase, Qualls, Holden and DED committed seventy-seven (77) violations of IGRA and the regulations of the NIGC.

38.    The NOV has not been resolved as of the date of this filing. The final amount of such a civil fine imposed against the Peoria Tribe for the improper operation of the Casino has yet to be determined, but the Peoria Tribe states that the imposition of any such fine was proximately caused by the actions and/or inactions of Campbell, and Campbell, Sneed Lang and Doerner Saunders should be made liable for any such penalty as damages in this action as permitted by law.

39.    There will be other expenses incurred by the Peoria Tribe related to responding to the NOV and which have been proximately caused by the actions and/or inactions of Campbell. These include attorney fees as well as other expenses and costs in the defense of that matter which have yet to be determined. Campbell, Sneed Lang and Doerner Saunders are liable for any such fees and expenses as damages in this action.

40.    To the extent that the wrongful actions and inactions of Campbell were done in reckless disregard of the rights of the Peoria Tribe and/or were done intentionally and with malice, the Peoria Tribe is entitled to an award of punitive damages against Campbell for the sake of example and by way of punishment, in accordance with 23 O.S. §9.1.

## FIRST CAUSE OF ACTION -
## LEGAL MALPRACTICE

41.     The Peoria Tribe reasserts and restates the allegations in paragraphs 1 through 40 above the same as if they were fully restated herein.

42.     Campbell, Sneed Lang and Doerner Saunders were attorneys for the Peoria Tribe and the Casino. As an attorney and as a partner of Sneed Lang and Doerner Saunders, Campbell had a had a professional duty as well as a duty on behalf of those law firms to exercise the ordinary skill, due care and knowledge of an attorney purporting to have specialized knowledge in the areas of Indian law and particularly Indian gaming, a highly regulated industry.

43.     Campbell's actions and inactions, set forth herein, breached the duties owed to the Peoria Tribe and its Casino.

44.     But for Campbell's actions and inactions as set forth herein, the Peoria Tribe would not have paid excess management fees and would not have been subject to sanctions by the NIGC. As a direct result of his actions and inactions, Campbell, Sneed Lang and Doerner Saunders caused damages to the Peoria Tribe and its Casino in excess of $2,067,561.00 as set forth herein.

## ALTERNATIVE SECOND CAUSE OF ACTION -
## BREACH OF FIDUCIARY DUTY

45.     The Peoria Tribe reasserts and restates the allegations in paragraphs 1 through 44 above the same as if they were fully restated herein.

46.     Campbell was an attorney for the Peoria Tribe and the Casino. As its attorney, Campbell owed a fiduciary duty of loyalty, trust and confidence to the Peoria Tribe and its Casino.

47.     Campbell's actions and inactions, as set forth herein, breached his fiduciary duty owed to the Peoria Tribe and its Casino.

48.     As a direct result of his breach of those duties, Campbell caused damages to the Peoria Tribe in excess of $2,067,561.00, as set forth herein.

## ALTERNATIVE THIRD CAUSE OF ACTION -
## DECEIT/FRAUDULENT CONCEALMENT AND FAILURE TO DISCLOSE

49.     The Peoria Tribe reasserts and restates the allegations in paragraphs 1 through 48 above the same as if they were fully restated herein.

50.     Qualls and Holden represented to the Peoria Tribe through its Business Committee and to the NIGC that DED would use the NIGC required method of calculating depreciation and the resulting management fee owed to DED, as outlined in the Revised Business Plan submitted in May 2007. They also represented to the Peoria Tribe and the NIGC that Campbell's compensation would not be based on a percentage of the monthly management fees. These representations were again stated and/or implied to the Business Committee in process of gaining approval of the 2012 Agreement by the NIGC.

51.     Campbell was aware that these representations were false as early as 2008.

52.     Campbell had a continuing duty to disclose to the Business Committee that the unlawful depreciation scheme was being used to calculate inflated management fees and that he was receiving a percentage of the inflated management fees.

53.     Campbell knowingly failed to disclose and/or knowingly concealed from the Business Committee that the unlawful depreciation scheme was being used to calculate inflated management fees and that he was receiving a percentage of the inflated management fees.

54.     The use of the unlawful depreciation scheme and Campbell's receipt of a percentage of the management fees were material facts implicating millions of dollars of revenue and possible sanctions of the Casino operations by the NIGC.

55.     Campbell concealed and failed to disclose these material facts intending to prevent the Peoria Tribe from objecting to such schemes so that he as well as Qualls and Holden would financially benefit. By these actions, Campbell further sought to avoid a background investigation

and suitability determination of himself and Baxcase. Further, Campbell, by concealing and failing to disclose this information to the Business Committee, sought to prevent the NIGC from learning of these illegal acts and taking regulatory action to halt such actions.

56.     As a result of Campbell's concealment and failure to disclose, the Peoria Tribe acted in reliance upon false information.

57.     The Peoria Tribe thereby suffered injury in an amount in excess of $2,067,561.00.

## FOURTH CAUSE OF ACTION -
## MONEY HAD AND RECEIVED

58.     The Peoria Tribe reasserts and restates the allegations in paragraphs 1 through 57 above the same as if they were fully restated herein.

59.     Campbell and Baxcase have money in their possession and control in the form of the percentage of the management fees paid to them but not approved by the Peoria Tribe or the NIGC.

60.     The facts and circumstances demonstrate that in equity and good conscience such money rightfully belongs to the Peoria Tribe.

61.     Campbell and Baxcase should be ordered to pay those monies to the Peoria Tribe.

## FIFTH CAUSE OF ACTION -
## UNJUST ENRICHMENT

62.     The Peoria Tribe reasserts and restates the allegations in paragraphs 1 through 61 above the same as if they were fully restated herein.

63.     As a result of his wrongful conduct as set forth above, Campbell and Baxcase have been unjustly enriched and are holding money which rightfully belongs to the Peoria Tribe and which they should not be allowed to keep.

64.    The Peoria Tribe has suffered an injustice by Campbell's and Baxcase's conduct and is entitled to the return of that money or a money judgment against Campbell and Baxcase in the amount of no less than $100,000.00, plus interest.

## CLAIM FOR PUNITIVE DAMAGES

65.    The Peoria Tribe reasserts and restates the allegations in paragraphs 1 through 64 above the same as if they were fully restated herein.

66.    To the extent that Defendants are found to have acted intentionally or recklessly as to the First through Fifth Causes of Action, punitive damages should be awarded against each of them individually pursuant to 12 O.S. 23 § 9.1 on the following bases:

A.    Defendants' conduct posed a serious hazard to the public by compromising the integrity of the regulatory process over Indian gaming;

B.    Defendants' conduct was highly profitable to Defendants;

C.    Defendants' conduct continued for a decade and was concealed due Campbell's failure to disclose relevant facts to the Peoria Tribe Business Committee; and

D.    Defendants were clearly aware of the severe risk which Campbell's conduct posed to the Peoria Tribe and its Casino operations.

67.    The Peoria Tribe should be awarded sufficient punitive damages to punish Defendants and make an example of them.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF THE PEORIA TRIBE PRAYS FOR:

1.    A money judgment against Campbell, Baxcase, and other persons or entities acting in concert with Campbell and Baxcase, in the amount of no less than $2,067,561.00, plus interest, for the illegal and inflated management fees paid by the Peoria Tribe;

16

2.    A money judgment against Campbell and Baxcase in the amount of any civil penalty imposed by the Chairman of the NIGC arising out of the NOV issued by the Chairman of the NIGC;

3.    A money judgment against Campbell and Baxcase for any attorney fees, costs and expenses incurred by the Peoria Tribe in responding to the NOV issued by the Chairman of the NICG;

4.    A money judgment against Sneed Lang and Doerner Saunders, to be apportioned according to the period during which Campbell was employed by and/or acted on behalf of each law firm and the Peoria Tribe for the following:  the total amount of the illegal and inflated management fees paid by the Peoria Tribe, plus interest; the amount of any civil penalty imposed by the Chairman of the NIGC arising out of the NOV issued by the Chairman of the NIGC; and the amount of any attorney fees, costs and expenses incurred by the Peoria Tribe in responding to the NOV issued by the Chairman of the NICG.  The total of such money judgment to be in an amount no less than $2,067,561.00;

5.    An award of punitive damages against Defendants as appropriate in an amount of no less than $2,067,561.00;

6.    In addition, pursuant to the Fourth and Fifth Causes of Action, a money judgment against Campbell and Baxcase in an amount believed to be no less than $100,000.00, plus interest, for the payments received by them pursuant to the illegal agreement that they receive a percentage of the management fee; and/or an order of the Court that Campbell and Baxcase pay to the Peoria Tribe the monies wrongfully in their possession, believed to be no less than $100,000.00, plus interest, plus punitive damages as proven;

7.    Judgment for the costs of this action; and

17

8.      Such other and further relief as the Court finds just and equitable in the circumstances.

Respectfully submitted,

Louis W. Bullock, OBA #1305
Patricia W. Bullock, OBA #9569
Bullock Law Firm, PLLC
1811 South Baltimore Avenue
Tulsa, OK 74119
(918) 584-2001
lbullock@bullocklawtulsa.com
pbullock@bullocklawtulsa.com


Micheal Salem, OBA #7876
Salem Law Offices
101 East Gray, Suite C
Norman, OK 73069
(405) 366-1234
msalem@msalemlaw.com

**ATTORNEYS FOR PLAINTIFF**

# SNEED LANG, P.C.
# MEMORANDUM

TO:        TONY HOLDEN, DAVID QUALLS
FROM:      STUART CAMPBELL
SUBJECT:   DIRECT ENTERPRISE DEVELOPMENT, L.L.C.
DATE:      OCTOBER 28, 2008
RE:        DEPRECIATION

A question has arisen as to the depreciation amount which should be included under the "Operating Expenses" as defined in the Third Amended and Restated Management Agreement. The specific language in the Management Agreement as to the "depreciation" which must be included under the operating expenses is based on an assumed 30 year useful life of the "facility." The Agreement does not provide for any other depreciation to be included under the operating expenses.

The definition in the Third Amended and Restated Management Agreement of "facility" means, the "specific buildings, improvements, and fixtures now or hereafter located therein or thereon and housed on the property or on associated and adjacent real property owned by the Tribe. . . ."

Under the terms of such Agreement, depreciation should actually be accounted for two-fold: (1) The depreciation associated strictly with the facility, its improvements and additions, which means any funds spent directly on the building and its fixtures; this dollar amount would be accounted for under the operating expenses. (2) A separate account for the depreciation on all other non-facility items such as trucks, forklifts, computers, software and other such items. The deposits made into the replacement fund in accordance with Section 3.12 would be whatever dollar amount is agreed upon between the management company and the Tribe. It is my understanding that the Tribe agrees to have such monthly deposits into the replacement account be based upon the depreciation amount withheld from the facility.

If you have any questions or desire any additional information, please let me know.

